IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

JENNIFER TRUE o/b/o C.T., )
)
        Plaintiff, )
)
vs. ) Case No. 15-5065-CV-SW-ODS-SSA
)
CAROLYN COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her daughter's application for supplemental security income. The Commissioner's decision is affirmed.

I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but….enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

A three-step analysis determines whether a claimant under the age of eighteen is disabled. *England v. Astrue*, 490 F.3d 1017, 1020 (8th Cir. 2007) (citing 20 C.F.R. § 416.924(a)). The third step is primarily at issue in this case. If the ALJ identifies a severe impairment (as the ALJ did here), the third step examines whether the claimant has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005) (citation omitted). "A child's impairment is functionally equal to a listed impairment if there is an 'extreme' limitation in one of six specific functional domains, or a 'marked' limitation in at least two domains." *Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005) (citing 20 C.F.R. § 416.926a)). Those six domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A person has a "marked" limitation in a domain when her "impairment(s) seriously interfere with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation means a limitation that is more than moderate but less than extreme. *Id.* An individual has an "extreme" limitation in a domain when her "impairments(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation is given to the "worst limitations." *Id.*

## II. BACKGROUND

Plaintiff Jennifer True applied for supplemental security income on behalf of her daughter, C.T., who was born in 1998. R. at 12, 162-67. The application was denied, and True requested a hearing. The hearing was held in January 2014, and the ALJ issued a decision on February 21, 2014, finding C.T. was not disabled. R. at 9-26, 32-61. The ALJ concluded C.T. had the following severe impairments: insulin dependent type I diabetes mellitus, asthma, oppositional defiant disorder, and attention deficit hyperactivity disorder. R. at 12. The ALJ found C.T. had less than marked limitation in interacting and relating to others and less than marked limitation in the ability to care for herself. R. at 23, 25. The ALJ determined C.T.'s allegation that she had "marked"

limitations in two domains of functioning or "extreme" limitations in one domain of functioning was not supported by the evidence of record.  R. at 14.

### III. DISCUSSION

Plaintiff argues the ALJ erred in not finding C.T. had a limitation that functionally equals a listed impairment.  Plaintiff contends the ALJ should have found C.T. has at least market limitations in the functional domains of interacting and relating to others and caring for oneself.  Doc. #8, at 9.  Plaintiff does not raise arguments with regard to the ALJ's findings pertaining to the other four domains.

### A.  Interacting and Relating to Others

The domain of interacting and relating to others "consider[s] how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004) (quoting 20 C.F.R. § 416.926a(1)).  "Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community."  *Davis v. Colvin*, No. 4:14-CV-04089, 2015 WL 2368427, at * 6 (W.D. Ark. May 18, 2015) (citing 20 C.F.R. § 416.926a(1)).

The ALJ concluded C.T. had a less than marked limitation in the domain of interacting and relating with others.  Plaintiff argues the ALJ should have found C.T. to have marked limitation in this domain.  The Court disagrees.  His determination is supported by substantial evidence in the record.

To reach his conclusion, the ALJ discussed and evaluated the medical evidence, school reports, C.T.'s testimony, C.T.'s mother's testimony, function reports, and opinion evidence.  R. at 13-20, 22-23.  The ALJ noted C.T.'s mother testified that C.T. has friends and spends time with her friends, including spending the night at friends'

3

houses. R. at 22-23.[1] The ALJ stated that C.T.'s high school principal stated that C.T. had a less than marked limitation regarding her ability to interact and relate to others. R. at 23.[2] Even C.T. self-reported to one of her providers that "she has been making new friends and getting along well with old friends." R. at 414.

The ALJ properly considered and weighed the opinion evidence in the record. The ALJ properly afforded the most probative weight to the opinion of examining psychologist Gabriel Cline, Ph.D. Dr. Cline's opinion is consistent with the record as a whole, including, among other things, C.T.'s medical conditions, treatment, performance in school, her mother's Function Report, her relationships with her friends, and her behavioral issues. R. at 18-19. The ALJ properly gave little weight to the opinions of case manager Jenna Myers and therapist Sherri Bryant because the record does not support their determinations that C.T. is "extremely" limited in interacting and relating to others.[3] R. at 19; *see e.g.*, *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (stating a treating source's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record); *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (holding an ALJ may discount a treating source's opinion if the ALJ provides good reasons for doing so).

The Court has thoroughly reviewed C.T.'s medical records, the opinion evidence, hearing testimony, function reports, and the ALJ's opinion. Based upon its review of the record, the Court finds that the ALJ's determination regarding C.T.'s less than marked limitation in interacting and relating with others is supported by substantial evidence.

---

[1] This finding is also supported by the function report submitted by C.T.'s mother wherein she stated C.T. had friends her own age, got along with teachers, and got along with other adults. R. at 185.

[2] C.T.'s teacher of nine months offered the same opinion. R. at 199, 202.

[3] Bryant's treatment notes establish C.T. had problems interacting and getting along with one person: her father. See R. at 17, 45-46, 388, 398, 401, 413, 418, 420-21, 423-30, 434, 436-37. Bryant's notes do not reflect constant or continuous difficulties with C.T. interacting or getting along with others. Thus, Bryant's opinion finding that C.T. was "extremely" limited in this domain is not supported by her own records.

4

## B. Caring for Self

The domain of caring for self "considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways….includ[ing] how the child copes with stress and changes in the environment and how well the child takes care of [her] own health, possessions, and living area." *Davis*, 2015 WL 2368427, at * 7 (citing 20 C.F.R. § 416.926a(k)). This includes how the child copes with stress and changes in the environment and how well the child takes care of her own health, possessions, and living area. *Id.*

The ALJ concluded C.T. had a less than marked limitation in the domain of caring for herself. Plaintiff argues the ALJ should have found C.T. to have marked limitation in this domain. The Court disagrees. His determination is supported by substantial evidence in the record.

The ALJ's determination was based upon the medical records, the hearing testimony, C.T.'s mother's function report, school reports, and medical providers' opinions. R. at 14-20, 24-25. The ALJ discussed evidence indicating C.T. and her family were not always compliant with recommended treatment for C.T.'s diabetes, but she showed improvement and stability with proper monitoring and compliance. R. at 14-16. The ALJ considered C.T.'s mother's function report wherein she represented that C.T.'s medical impairments did not limit C.T.'s physical abilities or daily activities. R. at 16. The ALJ also noted that the medical records revealed C.T. frequently presented to appointments and therapy sessions well-groomed, appropriately dressed, and displayed proper hygiene. R. at 25.

Also, as discussed above, the ALJ properly considered and weighed the opinion evidence in the record. The ALJ did not err in affording the most probative weight to the opinion of Dr. Cline. And the ALJ did not err in giving little weight to the opinions of Myers and Bryant because the record does not support their determinations that C.T. is "extremely" limited in caring for herself. Although Myers opined that C.T. had extreme limitation in caring for herself, Myers's notes show that C.T. took care of herself (R. at 404); had been medication compliant (R. at 404); took showers on her own, typically every other day (R. at 399, 403); cleaned her room (R. at 396-97); and felt safe and

5

denied needing a safety plan (R. at 395). Bryant, likewise, concluded C.T. had extreme limitation in caring for herself, but Bryant's records do not reveal extreme (or even marked) limitation in C.T.'s ability to care for herself. *See e.g.*, R. at 394, 398, 401, 405, 408, 413, 416, 418, 420-30, 433-35.

Based upon its review of the record, the Court finds the ALJ's determination that C.T. has less than marked limitation in caring for herself is supported by substantial evidence.

## IV. CONCLUSION

The Court concludes there is substantial evidence in the record as a whole to support the ALJ's decision, so the denial of benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 16, 2016　　　　　　　　UNITED STATES DISTRICT COURT